**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. THOMAS & ST. JOHN**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**SELENA CABRERA ORTIZ,**<br><br>Defendant.<br>_____ | 3:24-cr-00016-RAM-EAH |

**TO:** Cherrisse R. Woods, Esq., AUSA
Melanie Lark Turnbull, Esq., AFPD

### ORDER

**THIS MATTER** came before the Court on the Motion for Reconsideration of Court Order Granting Government's Motion for Detention, filed on July 30, 2024 by Attorney Melanie Lark Turnbull, AFPD, counsel for Defendant Selena Cabrera Ortiz. Dkt. No. 14. The Court construes this motion, inter alia, as one to reopen the June 26, 2024 hearing on the Government's Motion for Detention of Defendant Selena Cabrera Ortiz, pursuant to 18 U.S.C. § 3142(e)(3)(A) and § 3142(f)(1)(C). The Court reopened the hearing on August 2, 2024. The Government was represented by Cherrisse R. Woods, Esq., AUSA, and the Defendant was represented by Attorney Turnbull. The Defendant, Selena Cabrera Ortiz, also was present. For the reasons that follow, the Court will deny the Defendant's motion.

### BACKGROUND

**I.   The Initial Detention Hearing**

On June 24, 2024, the Defendant was charged in a criminal complaint with possession with intent to distribute a controlled substance (cocaine), in violation of 21 U.S.C. §§ 841(a)(1). Dkt. No. 1. The amended affidavit[1] supporting the complaint, executed

---

[1] The original affidavit in support of the Criminal Complaint referenced an incorrect date for the incident giving rise to the arrest. The Agent corrected the date and filed an amended affidavit. Dkt. No. 1-2.

by a special agent with the Department of Homeland Security, U.S. Immigration & Customs Enforcement Homeland Security Investigations, provided that, on June 23, 2024, Transportation Security Administration ("TSA") employees were conducting routine inspections of passengers departing Cyril E. King International Airport on St. Thomas. Dkt. No. 1-2 at 3. The Defendant and a partner, who were traveling to JFK International Airport in New York, approached the screening checkpoint, and Defendant's suitcase was x-rayed. *Id.* The TSA officer noticed "an anomaly in the form of a large frozen mass which appeared to have a rectangular mass inside of it." Upon physical inspection, the officers noticed two freezer bags containing frozen shrimp with black saran wrap sticking out of one of the packs of shrimp. *Id*. The Defendant and her partner were escorted to a secondary inspection area for further examination. Customs & Border Protection officers examined the packages of frozen shrimp and discovered a total of four bricks of a white powdery substance wrapped in black saran wrap. *Id*. at 3-4. The substance tested positive for cocaine and weighed a total of 4.17 kilograms. *Id.* at 4. The Defendant later indicated that the suitcase containing the two freezer bags belonged to her. *Id.*

The Government moved for detention under 18 U.S.C. § 3142(f)(1)(C) and (e)(3)(A), as Cabrera Ortiz was charged with violating 21 U.S.C. § 841(a)(1), an offense under the Controlled Substances Act for which the maximum term of imprisonment was more than ten years, which gave rise to a rebuttable presumption that no condition or combination of conditions of release would reasonably assure her appearance or the safety of the community under 18 U.S.C. § 3142(e). Dkt. No. 6. The Government asserted that the Defendant posed a significant risk of flight and danger to the community, given the seriousness of the charge, the substantial quantity of drugs involved, the fact she was apprehended while attempting to leave the Territory, and the presumption of detention under the statute. *Id.* at 2. It concluded that there was no condition or combination of

conditions that would reasonably assure her appearance as required and the safety of any other person or the community. *Id.*

The Defendant submitted a Declaration from her mother, Aida Cabrera de Ortiz ("Ms. Ortiz"), who she had asked to be her third-party custodian as a condition of pretrial release. Dkt. No. 7-1. Ms. Ortiz stated that the Defendant would reside in her home, along with the Defendant's three children (aged 9, 8, and 6), where they had all been residing prior to the arrest. *Id.* Ms. Ortiz indicated that she understood that, if the Defendant were released into her third-party custody, she could not have firearms, narcotics, or other controlled substances in her home for which there was no valid prescription, and that she understood her responsibilities as a third-party custodian. *Id.*

The Government made an oral motion to rely on the amended affidavit of the agent submitted in support of the Complaint, which the Court granted.

At the hearing, Ms. Ortiz testified through an interpreter, after which the attorneys made their arguments. The Court granted the Government's motion. Dkt. No. 10. It ruled that because the Defendant faced a severe sentence of ten years to life if convicted, had a sibling in the Dominican Republic and had the means to travel, the risk of flight analysis weighed in favor of detention. *Id.* at 8-9. In addition, while counsel argued that the Defendant was a first-time offender, appeared to be productive (i.e. had held a job), and her role in the alleged drug trafficking did not appear to be significant, the Court analyzed the factors under 18 U.S.C. § 3141(g) and ruled that she did not present any evidence to support a conclusion that she would not pose a threat to the community. *Id*. at 9-12.

On July 24, 2024, an Information was filed charging the Defendant with a violation of 21 U.S.C. 841(a)(1), possession with intent to distribute cocaine. Dkt. No. 12.

## II.     The Motion to Reopen the Detention Hearing and for Reconsideration

As indicated above, the Court set a hearing on the Defendant's "Motion for Reconsideration" for July 31, 2024. At the hearing, the Defendant's stepmother, Cynthia Delores Ingram Lynch ("Ms. Lynch") testified. She stated she was Ortiz's stepmother, married to Ortiz's father, and they lived at 2593 Breezy Meadows Road, Apopka, Florida. The house contained three bedrooms and two bathrooms. She has known the Defendant since she was 12 years old, and spoke with her three or four times a week. Ms. Lynch described the Defendant as quiet, and added that she had a good relationship with her stepdaughter, who is respectful and listens to her. Ms. Lynch further testified that she was aware of the charges the Defendant was facing, was willing to be her third-party custodian, and understood her responsibilities in that regard. Ms. Lynch said she has been a practical nurse since 2008 and worked twelve-hour shifts two or three days a week at a nursing home about 35 minutes away. On the days she would be working, the Defendant's father—who is otherwise retired but who helps his son-in-law at his shop two or three days a week—would supervise the Defendant.

On cross-examination, Ms. Lynch responded affirmatively to the Government attorney's question whether the house was part of a homeowners association ("HOA"). She said she had discussed with the HOA the possibility of someone living at her residence who was facing criminal charges. Ms. Lynch appeared to be confused at first about the difference between someone being charged with a crime and convicted, but she represented to the HOA that the Defendant had only been charged. Ms. Lynch expressed concern about the charge because she did not want "problems." She also indicated the house did not have a landline telephone, although she was willing to install one.

Upon further questioning, Ms. Lynch stated that the HOA rules allowed a person to be a guest in a home for two weeks but, after that, their name had to appear on the

lease, and they had to undergo a background check. If the person did not pass the background check, they could not stay at the house.

The attorneys then offered arguments against or in favor of detention. Defense counsel incorporated her arguments from the prior hearing. While this was a presumption case, Attorney Turnbull asserted that the burden to rebut the presumption was light. She repeated her argument that the crime was serious, but the weight of the evidence was not heavy because there was no evidence of the Defendant's direct participation and active role in the endeavor—she was an "unknowing mule." To rebut dangerousness, she would not be engaging in further criminal conduct due to her changed circumstances in Florida, with her children at the residence, and she was a first-time offender, whereas in other cases, people receiving detention were often repeat offenders. Regarding the history and characteristics prong of the detention analysis, the Defendant was a single mother taking care of her children, who had been previously employed (although she was not employed at the time of the last hearing). As to the nature of the crime and seriousness, the Court had only the charge set out in the Information—while it made this a presumption case, she did not pose a danger to anyone.

Attorney Woods, representing the Government, also incorporated her arguments from the prior hearing and responded that the weight of evidence was strong and signaled the Defendant's direct participation in the crime, as she admitted that the luggage in which the contraband was found was hers, she was traveling to New York, and she was participating in drug trafficking which is a danger to the community. Further, the proposed third-party custodian was not suitable for a number of reasons. The home had no landline to contact her. Also, the Pretrial Services Report stated that she had had no contact with her father and was unaware of his occupation and whereabouts, making the Government uncomfortable with Defendant's new proposal. Regarding ties to the

community, while she was born and raised on St. Thomas, she has had no stable residence and was not employed. Moreover, since the Defendant's father would be spending significant time watching her while her stepmother was at work, he would function as an alternate third-party custodian, and the father did not testify.

Attorney Turnbull asserted that "ties to the community" was not limited to St. Thomas—those ties could also be in Florida, where her father and stepmother lived. Only in response to the Court's question did Attorney Turnbull contend, at the end of the hearing, that home detention would be the least restrictive condition of release, with standard conditions allowing the Defendant to work and run errands for sustenance. Attorney Turnbull also interjected that the Pretrial Services Report was incorrect because the Defendant was talking about her children's father that she had had no contact with. The Probation Officer in the courtroom stated that he would attempt to contact the officer who wrote the report to clarify that issue.

The Court reserved decision and now sets forth its reasons for denying the Defendant's motion.

## DISCUSSION

### I. Applicable Legal Principles

Title 18 U.S.C. § 3142(e) authorizes the Court to detain a defendant after a hearing unless the Court finds that there exists a "condition or combination of conditions [that] will reasonably assure the appearance of the persons as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In making this determination of whether any conditions of release can reasonably assure a defendant's appearance and the safety of others, the Court must consider the factors set out in 18 U.S.C. § 3142(g):

> (1)  the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591,

>> a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "To justify pretrial detention, the [G]overnment must establish risk of flight by a preponderance of the evidence, and dangerousness by clear and convincing evidence." *United States v. Kanawati,* 2008 WL 1969964, at *2 (D.V.I. May 5, 2008) (citing, *e.g., United States v. Himler,* 797 F.2d 156, 160–61 (3d Cir. 1986) and *United States v. Traitz,* 807 F.2d 322, 324 (3d Cir. 1986)). "A finding of either risk of flight or danger to the community is a sufficient source of authority to detain the defendant." *United States v. Richardson*, No. 2009-cr-23, 2009 WL 2044616, at *3 (D.V.I. July 9, 2009) (citing *United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985)).

Pursuant to Section 3142(e)(3), a rebuttable presumption arises in favor of detention where "there is probable cause to believe that the person committed – . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)[.]" 18 U.S.C. 3142(e)(3)(A). Through the presumption, Congress recognized that persons charged with major felonies presented a significant risk of continuing to engage in established patterns of criminal activity and thus posed a significant risk of pretrial recidivism. *United States v. Strong,* 775 F.2d 504, 508 (3d Cir. 1985).

The charge against the Defendant—a violation of 21 U.S.C. §§ 841(a)(1) for possessing with intent to distribute cocaine—carries a mandatory minimum sentence of ten years and a maximum of life under the Controlled Substances Act. As a result, the presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" applies in this case. 18 U.S.C. § 3142(e)(3)(A). In addition, the presumption arises if there is probable cause to believe that the defendant actually committed the offense with which he is charged. 18 U.S.C. § 3142(e); *United States v. Suppa,* 799 F.2d 115, 118 (3d Cir.1986). In this circuit, an indictment—or an information in the Virgin Islands—charging the defendant with committing a crime proscribed by the Controlled Substances Act which carries a maximum penalty of ten years or more is sufficient to support a finding of probable cause. *Suppa,* 799 F.2d at 119. Thus, the presumption arises under that provision as well.

This Court has held that, to rebut the presumption, a defendant is "required to produce 'some credible evidence' to assure his presence before the Court and safety of the community." *Richardson*, 2009 WL 2044616 at *3 (citing *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986)). Rebuttal evidence may include "'testimony by coworkers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health, or family situation,' or evidence of steady employment." *United States v. Levy*, No. 08-393, 2008 WL 4978298, at *1 (E.D. Pa. Nov. 20, 2008) (quoting *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986)); *see also Suppa*, 799 F.2d at 120. No single factor or combination of factors is dispositive. *See Levy*, 2008 WL 4978298, at *1. The ultimate determination on this issue is for the Court, "based on all evidence and arguments adduced." *Id.* (citing *Suppa*, 799 F.2d at 118-19).

## II. Risk of Flight

The Defendant provided some evidence at the June 26, 2024 hearing that she was not a risk of flight, barely rebutting the presumption, because she grew up on St. Thomas, her mother and minor children lived on St. Thomas, and she had a job there.[2] That evidence was offered in the context that the criminal proceeding was taking place in the district court on St. Thomas, and therefore, the Court was considering the community and family ties Defendant had to St. Thomas to show that she was not a risk of flight.

However, at the reconvened hearing, the Defendant was offering a third-party custodian who lived over 1,200 miles away from St. Thomas. Attorney Turnbull contended that the Defendant's family ties in Florida showed she was not a risk of flight. However, case law undercuts Attorney Turnbull's argument that family ties in the community where a proposed third-party custodian lives is an appropriate substitute to assuage the Court's concern that being 1,200 miles from the district where the criminal proceedings take place could secure the Defendant's presence at trial.

In *United States v. Murrietta*, 20-cr-218, 2020 WL 7643236 (W.D. Pa. Dec. 23, 2020), a defendant was charged in Pennsylvania with drug conspiracy. The defendant was arrested in Arizona and eventually sought to be released to a third-party custodian in Arizona citing, inter alia, his extensive ties to the community there. The Court denied the relief opining, in pertinent part, that the defendant had no ties whatsoever to the Western District of Pennsylvania "where this case is pending":

> As to community ties, it is appropriate to consider whether a defendant has ties to the district where the prosecution is pending. *See United States v. Bucio*, Crim. No. 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (the defendant's lack of any community, financial, family or employment ties to the district where prosecution was pending weighed in favor of revoking release

---

[2] It was later determined by the Probation Office that the Defendant was not currently employed and was not employed at the time of her arrest.

> order); *United States v. Villegas*, No. 3:11–CR–28, 2011 WL 1135018, at *7 (E.D. Tenn. Mar. 25, 2011) ("[A]lthough the defendant has ties with the community in which he lives in California, the defendant has no ties with this District, and the Court may consider this fact.") (citing *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (finding that "community" embraces ties to the community in which the charges are brought and the community in the United States to which the defendant has ties)); *United States v. Rivera*, 90 F. Supp. 2d 1338, 1343 (S.D. Fl. 2000) (observing that a court should consider a defendant's ties to the community in which he faces prosecution).

*Id.* at *8; *see also United States v. Carothers*, No. 3:20-CR-31, 2023 WL 6847586, at *3 (W.D. Pa. Oct. 17, 2023) ("As to risk of flight, Carothers has presented evidence that he is a lifelong resident of the Western District of Pennsylvania and would live with his mother in La Belle, Pennsylvania—whom Pretrial Services approved as a third-party custodian—upon release.")

Here, the risk of flight concern is even stronger than it was at the first detention hearing, given that the Defendant proposes a third-party custodian in a community where her only ties are her members of her family—her stepmother and father, and her children who would move with her. Other than that, she has no job or support network in Florida. And, should she be inclined to flee, she will have a 1,200 mile head start from the district court where she will be prosecuted.

The risk of flight determination "is not to detain habitual criminals or deceitful persons; it is to secure the appearance of the accused at trial." *United States v. Himler,* 797 F.2d 156, 161 (3d Cir. 1986). A defendant has "a substantial motive to flee given the severity of the sentence he may face in the event of conviction." *United States v. Wrensford,* Crim. No. 2012-0012, 2012 WL 6028628, at *7 (D.V.I. Dec. 4, 2012) (internal quotation marks omitted). The Defendant faces a severe sentence of ten years to life if convicted. As indicated in the prior Order, the Court found it significant that, while the Defendant is a

U.S. citizen, she has a sibling in the Dominican Republic and had the means to travel, given the circumstances of her arrest. These factors also weigh in favor of detention, and the Court again concludes that it is more likely than not that the Defendant would flee if released pending trial. *United States v. Rice*, No. 17-cr-1450, 2017 WL 6349372 at *8 (W.D. Pa. Dec. 13, 2017); *see also United States v. Miller,* No. 00-cr-103, 2000 WL 633048, at *4 (E.D. Pa. May 5, 2000) (nature of drug trafficking offense suggests a risk of flight and danger to the community); *United States v. Merlino,* No. 99-cr-353, 1999 WL 557943, at *3 (July 30, 1999) (legislative history indicates that family and community ties should not weigh heavily in risk of flight analysis).

### III. Danger to the Community

The Court concludes once again that detention is warranted based on its analysis of the danger to the community factor. The Defendant's stepmother mentioned that the Defendant was "quiet," took care of her children, and responded "no" to a question whether the Defendant had been "violent to anyone." Attorney Turnbull reiterated that the Defendant was a first-time offender, appeared to be productive (i.e. had held a job), and her role in the alleged drug trafficking did not appear to be significant. As the Court found previously, this last argument was merely speculation, and nothing was presented to support a conclusion that she would not pose a threat to the community—as a negative response that she was unaware whether the Defendant was violent to anyone, without any further description, does not suffice. *See United States v. Santiago-Pagan,* No. 1:08-CR-0424-01, 2009 WL 1106914, at *5 (M.D. Pa. Apr. 23, 2009) (finding that the defendant did not rebut the presumption of dangerousness because "[t]he court heard no testimony relating to defendant's moral integrity, respect for the law, or personal reliability; such evidence is not only helpful, but is often crucial to an effective rebuttal of the statutory presumption"); *see also United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986).

At the reopened hearing, although the Defendant presented a new third-party custodian and sought to argue that she had ties to the (Florida) community through her family, she did not present –once again—any credible evidence *rebutting* the statutory presumption that she was a danger to the community. *See United States v. Benjamin*, No. 19-cr-79, 2021 WL 35559471, at *3 (D.V.I. Aug. 11, 2021) (citing *Perry*, 788 F.2d at 107, concluding that the defendant had not rebutted the presumption of detention despite his testimony about "his ties to the community, the fact that he was out on bail from state court charges and had not fled, his education, and his intention to remain . . . to face all charges"); *United States v. McKnight*, No. 2:20-cr-265-5, 2021 WL 615211, at *6 (D.N.J. Feb. 17, 2021) (holding that the defendant did not rebut the presumption of detention because evidence of his ties to the community had no "bearing on his danger to the community" and other evidence weighed in favor of detention); *Matthias*, 2017 WL 1536430, at *15 (finding that evidence of the defendant's "ties to family and the community; the availability of two third-party custodians and a place to stay; and his voluntary surrender to police" was insufficient to rebut the presumption of detention).

As this Court ruled in *United States v. Roebuck*, 23-mj-0009 (D.V.I. May 5, 2023), "if a defendant fails to rebut the presumption of dangerousness by not providing any credible evidence, the Government retains the ultimate burden of persuasion by clear and convincing evidence that the Defendant presents a danger to the community by assessing the § 3142(g) factors." *Id.* at 10-11. The Court concludes that the Government has met that burden here.

The Court has nothing further to add to its previous analysis that the nature and circumstances of the offense with which the Defendant is charged—possession with the intent to distribute a large quantity of drugs (4.17 kilograms)—is very serious and in the Court's view, weighs against release. This charge implicates drug trafficking, a crime

which clearly poses a danger to the community. *See Strong*, 775 F.2d at 506 ("The statutory language, as well as the legislative history [of 18 U.S.C. § 3142], unequivocally establishes that Congress intended to equate trafficking in drugs with a danger to the community."); *United States v. Abreu*, 2021 WL 1884788, at *6 (E.D. Pa. May 11, 2021) (holding that offense involving large amounts of cocaine was serious and posed danger to the community).

Similarly, the weight of the evidence analysis remains the same as before. The evidence, as set out in the amended affidavit in support of the Complaint, is strong, as it provides that the Defendant was allegedly directly involved in the drug trafficking, carrying the cocaine hidden in a suitcase that she admitted was hers. Although defense counsel contended that her role in the trafficking was small, in an effort to minimize the dangerousness of the crime and the Defendant's dangerousness to the community, such an argument is premature, either going to the merits of the case, or is speculative, and does not figure into the Court's detention calculus at this point. *See United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("A pretrial detention hearing . . . is. . . no[t] a trial on the merits.").

As to the Defendant's history and characteristics, the Defendant proposed a new third-party custodian, her stepmother Ms. Lynch. However, the Court concludes that the proposed custodian would not be adequate for a number of reasons. First, the residence does not have a landline, making it impossible for the Defendant's probation officer or the court to contact her to ensure she was at the house. While the stepmother indicated she would add a landline, other issues are problematic. First, given that Ms. Lynch, as a nurse, works twelve-hour shifts two to three times a week, she would be away from the house for significant periods of time. She stated that her husband would be home then to supervise the Defendant. What the Defendant is proposing is that Mr. Lynch act

essentially as a co-third-party-custodian. But Mr. Lynch did not testify, and therefore the Court could not assess his willingness to assume this responsibility. And given that the Government maintained its objection to Defendant's release based on the statement in the Pretrial Services Report that the Defendant stated she had not had any contact with her father and did not know where he was, her being placed in his house under those circumstances would be problematic.

Further, and more concerning, Ms. Lynch testified that they belong to a HOA. She asked an unidentified person at the HOA if it would be all right if the Defendant and her children stayed with her and her husband. She later explained that the HOA requires anyone staying longer than two weeks must be added to the lease, and that the HOA would conduct a background check of that person. In other words, the Defendant and her children could stay at the house for two weeks but, depending on the results of the background check, the HOA might not permit them to stay longer. Defendant's counsel sought to convince the Court that the default position is to release a person before trial, so therefore the Court should release her to the third-party custodian and then address what may occur with the HOA. The Court rejects this argument. This is a case where the Defendant must rebut the presumption against pretrial release. 3142(e). The possibility of the HOA not permitting the Defendant to remain would, at the very least, cause great disruption, particularly to the minor children, as the Defendant would have to be incarcerated once again, and the Court is unwilling to proceed on this problematic course.

The Court also incorporates its previous analysis, pointing to a defendant's unemployment, particularly in cases involving drug offenses, as supporting the danger to the community prong. *See United States v. Tucker*, No. 1:20-cr-41, 2020 WL 5593836, at *2 (W.D. Pa. Sept. 18, 2020) ("In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs.");

*United States v. Bastianelli*, No. CR 17-305, 2018 WL 1015269, at *8 (W.D. Pa. Feb. 22, 2018) ("'Facing the lack of legitimate income, [the defendant's] temptation to continue to engage in narcotics dealing will be strong.'") (quoting *United Sates v. Dumont*, 634 F. Supp. 407, 407 (W.D. Pa. 1986)). The history and characteristics of the Defendant factor weighs in favor of detention.

The final § 3142(g) factor—the nature and seriousness of danger to the community—"requires the court to assess the totality of the evidence presented." *Santiago-Pagan*, 2009 WL 1106814, at *7. The seriousness of the crime, "in the absence of significant countervailing considerations, allows the court to draw the inference that the defendant will simply continue his alleged narcotics activity if released." *Id.* Given the significant amount of controlled substances allegedly involved in the instant offense which indicates that the Defendant is involved in drug trafficking, the Court concludes that she poses a serious danger to the community if released.

Assessing the four § 3142(g) factors, the Government has once again established by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the . . . safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Accordingly, based on the analysis above, the Court will deny the Defendant's Motion for Reconsideration.

WHEREFORE, it is now hereby **ORDERED**:

1. The Defendant's Motion for Reconsideration, Dkt. No. 14, seeking pretrial release, is **DENIED**.
2. The Defendant shall remain in the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

3. The Defendant shall be afforded a reasonable opportunity for private consultation with counsel.

4. Upon order of a Court of the United States or upon request of an attorney for the Government, the Federal Bureau of Prisons shall deliver Defendant to the United States Marshal for the purpose of appearance in connection with a Court proceeding.

5. This matter may be reopened by Defendant at a later date pursuant to 18 U.S.C. § 3142(f) if new evidence develops.

ENTER:

Dated: August 5, 2024

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE